4-0-2-3-9 Kelly v. Allen Independent School District. Mr. Eric. Good afternoon, Your Honor. Again, my name is K.C. Eric, and I'm here on behalf of the plaintiffs in this case, Sean Kelly, Shannon Kelly, and C.K., their minor son. I'll be referring to the minors by their initials only to protect their identities, of course. To frame this case, I want to put it in the proper context. This is an appeal from a summary judgment that was granted on the district's motion. As the court is well familiar, the standard is de novo review, viewing the evidence in the light most favorable to the non-movement here, the plaintiffs. The facts of this case are quite tragic. It deals with a peer-on-peer, student-on-student sexual harassment of my client, C.K., by another student, B.H. B.H. began with, or what got him notoriety was in August 2009, enticed, coerced a kindergarten girl to perform oral sex on him. This obviously made its way through the community. How old was B.H. at that time? I believe that was, you know, I don't know his exact age. I know the girl was a kindergartner. I believe he was, might have been in fourth grade at the time, third or fourth grade. Come to find out that in 2007, 2008, B.H. was referred seven times for disciplinary action, 2008, 2009, these precede this event. He was referred 17 times for disciplinary action. My client, C.K., the victim, has suffered with cerebral palsy his entire life, also suffers from attention deficit hyperactive disorder. These are issues that he has dealt with since birth. What that has caused him to have is a noticeable limp in his gait, which brought the harassment from B.H. and another student, T.B. Fast forward to Curtis Middle School. This is a middle school within the Alameda Independent School District. B.H. begins harassing C.K. Is it sixth grade? Sixth grade, yes, Your Honor. Again, making fun of the way he walks, stealing his glasses, picking on him, abusive behavior like that. It escalated into eventually holding C.K. down. B.H. and another student, T.B., holding him down and grinding, B.H. grinding his genitals in C.K.'s face. It's known as teabagging. And in addition to that, B.H. would call C.K. a homo. He would call him a faggot. And these are his words, not mine, of course. But apparently B.H. did this to a lot of people, both girls and boys. So how can we say this is – I mean, this is terrible behavior. That's not the question. The question is whether Title IX has something to say about it. And so how can we say this is because of sex when B.H. seems to just be doing this indiscriminately with kids in the class and in the school? Thank you, Your Honor. I think that is the pivotal question. And it's answered when you look at the evidence and why C.K. was treated differently and why we believe it's based on gender. In B.H.'s own written statement after this incident, this came out through the investigation, he says, and he spells it this way, I have never boot-fooked anyone in my life. I have never done that. I would never do that. We acted like we fake-raped C.K. And this is from the other student, T.B. Fake rape, joke rape, again, the grinding the genitals. Yes, he was harassing other students, and we cite to that because that's evidence that the school was aware of this. Yes, that was going on. But it never got to the level of what it did with C.K., and that's why we believe it's based on gender. This is a sexual assault. And that's the dry-humping and treating him, for example, calling him their boyfriend, his girlfriend at times. Does it have to be based on gender, or can it be based upon a sexual act? Does it have to be? Does sex in the statute mean gender only, or can it be for sexual harassment or sexual gratification independent of gender? Has anyone defined that in the statute? I don't believe so, Your Honor. I think that's a very good question. I don't believe the courts have been really clear about that because they seem to confuse gender, and then they kind of skip to sexual assault, the actual sexual assault act that's being performed. Our contention is that it is based on gender. I think it does comply with the statute. But I believe the standard is sexual assault. Okay. But is there also a requirement that Allen ISD have actual knowledge of C.K.'s harassment? That, to me, seems—you said the other was the pivotal issue. Frankly, I don't know about the other judges in the panel, but I'm really concerned about if there's actual knowledge ahead of time. Right. And I agree, Your Honor. Actual knowledge is a very high standard, without a doubt. And I believe there is evidence of actual knowledge. In one of the cases I cited, I believe it's the Donovan opinion, you can use evidence of harassment to non-plaintiffs to establish actual knowledge. Did they have any evidence at this school that he was harassing people? Obviously, they may have been indifferent or been reckless in not making him more supervised, given his previous act. Right. But is there any evidence that at this school they had actual knowledge? The evidence—the most telling evidence—yes, Your Honor, there is. The most telling evidence are the witness statements that were taken by all the students. There are a number of witness statements. But those are all taken after this came to light. I'm saying knowledge that they knew prior to December 9, 2010, that the school itself knew—maybe it should have known, no doubt— but that it did know prior to December 9, 2010, that this harassment was going on. My answer is yes, they did. What evidence is there? The student statements cite to the fact that—and a couple of students say—the teachers knew this was going on. Who said—which ones say that? Because I pulled them. Which ones say that? I don't recall the initials. They're in our summary judgment response. Did they say the teachers knew that the—I don't know—harassment was going on? Correct. The teachers knew before December 9, 2010? Yes, Your Honor. Is the teacher knowledge adequate for Allen ISD's knowledge, or does someone higher than a teacher, I mean more in the seniority, need to know? The knowledge can be imputed to Allen ISD. Okay. So there's evidence in this record that the teachers knew before December 9, 2010, that people were being sexually harassed? Correct. And that's from the witness statements, the student, the non-plaintiffs, and also from C.K. himself. He says that? Yes, Your Honor. Where is that in the record? That would be in his affidavit, Your Honor. His affidavit says the teachers knew before this incident. Because isn't the December 9, 2010 the date that the— When he's writing his genitals in his face. Yes, Your Honor. That's correct, yes. So there's evidence in the record that the teachers knew beforehand that he was being sexually harassed? Correct, Your Honor. And that other people were being sexually harassed, or just him? Other people were being harassed, and also the same manner, the dry humping. Yeah, dry humping is sexual harassment. Correct, Your Honor. Yes, that's a roundabout way of saying yes, Your Honor. The other students were being sexually harassed. I believe some of the most telling evidence is from Robert Puster, who was an assistant principal at the time, who led the investigation after this incident. And this is AISD's own records. They found that B.H. did sexually assault C.K., and that he had been doing it for some time. This is in the disciplinary forms. See, all of this stuff, I mean, I'm looking where you cited something in the record to show teacher knowledge, and all of the stuff that you're citing shows the teacher wasn't there when this would happen. Correct, Your Honor. So then how does that show teacher knowledge? The teachers were there in the gym class area, in the gymnasium. Okay, but all of these students are saying they would wait, and this is how kids, I mean, I'm old, but I'm not that old. I remember being a kid, and everybody would wait for the teacher to turn her back or whatever, and that's when something bad would happen. It's not when the teacher was looking at the offending child. So that's what they seem to be testifying to. So point me where in your brief you cite someone saying the teacher was aware, rather than that the teacher was somewhere in the school building but wasn't watching, and that's when the kids would act up. Again, in the witness statements from the other students, the humping would occur. But you have to point in your brief to evidence in the record. Correct. And I'm asking you where you did that on this point of teacher knowledge. Correct, Your Honor. I believe, and I don't have a copy of the brief right here in front of me, but it is the latter portion of the brief where the students talk about that conduct, the dry humping, the teasing, the sexual harassment occurring in the gymnasium itself. In the gym doesn't mean the teacher knew. The teacher is not in the gym where they're supposed to be. You have to have actual evidence or at least circumstantial evidence. If you had evidence that it was in the gym and then you had somebody else say the teachers were always in the gym, then that could be some evidence corroborating that the teachers might have seen it. But you got saying it's in the gym and then you got the teachers out in the conference room or the office, not where they're supposed to be. So that doesn't show actual knowledge. It shows deficient monitoring, terrible monitoring, but it doesn't show. In response, I think you aptly stated circumstantial evidence. Well, where is the part where it says the teachers were in the gym always or they were there at the time this happened or that they did see it or anything of the sort? I will concede that there was no teacher that was looking at BH and CK at the time of the December 2009 incident. But prior to that, we need prior to that. Correct. The entire school year prior to that, and that includes prior and for some time a little bit after, that's what those witness statements are directed at. Yeah, they say this is from your own brief. When changing clothes, the students were never supervised by a teacher or coach, and the attacks would happen at that point. So that's very typical of children. They wait until the adult authority figure is not looking, and that's when they act up. So then can you point me to anything better than that? I want to distinguish that, and I appreciate that. The attacks on CK, the ones that rose really to the offensive level of sexual harassment occurred at the locker room. When the adults weren't around. They were unsupervised. Right. And so then how does that show knowledge? I mean, I agree that's not very good management of the school, but how does that show knowledge? It shows knowledge because of the conduct and what the students have said occurred before that incident and the treatment in the gym, in the locker room, and the other students, the boys and the girls that provided witness statements, and said that they would engage in this similar conduct, the humping, outside of the locker room. The attacks on CK that became the basis of this lawsuit occurred in the locker room, and I agree that the issue is there was no one in that locker room staring at them or looking at them when this occurred. The circumstantial evidence, I believe as Judge Elrod said, is there, and that is from the other students and the conduct that occurred when there would be a teacher present, maybe even with their back turned. I want to be clear. I did not say that I found there was circumstantial. I asked you if there was circumstantial evidence, and I posited what could be possible circumstantial evidence. My problem is I have every single one of these incident reports, and I do not see that it ever says the teacher saw. In fact, things say to the contrary, that the teacher was taking roll, and did not see him. They say over and over that the teacher didn't see. Your Honor, I did not mean to misquote you at all. I thought you said there has to be circumstantial evidence. Yes, there has to be. I agree, and that's what I'm just asking you, beseeching you, to try to point me to some evidence that supports that they have actual knowledge, which is a really high standard. It is, and the students, I don't believe, said they saw it. They knew. I believe they said the students knew, the teachers knew what was going on, not that they saw. If you had some proof of that, then I would want to know where that is in the record. I do not have that, and I've looked at the record pretty clearly. Your Honor, I agree with you, and if I had proof of that, I doubt we'd be arguing about that point today. It's a really high standard. It's not deliberate indifference or reckless. I mean, there is a deliberate indifference later, but at this standard, you have to have actual knowledge. It's not constructive knowledge, and I agree with you. Do you have any criticism of how the school reacted once the father did make a complaint? Yes. If you're referring to the email that preceded it, it was October 2009 that preceded this incident. No, no, no. I'm saying once he said my child has been subjected to this horrific conduct by BH, they immediately leapt into action and started investigating and so on and so forth, and BH was put in some sort of detention or taken out of the picture. Correct. Is there anything at that point that they should have done differently? I think they should have moved quicker, and that's one of the issues that we had. I thought the report was like December 9th, and by December 13th, they're already investigating. That's pretty fast. It is. Well, we're dealing with a sexual assault from a student that's already been convicted of sexual assault, and now we have this happen again. Merely alternating their schedules so they avoid each other is not sufficient. He was still getting picked on, still getting harassed, not by BH but by other students, and then it was not until the investigation, and then they did the witness statements, they did not act quickly enough, and then finally they removed him, and that was just too long because all the while CK suffered and suffered and suffered. So absolutely, they were delivering different. I believe they were. They should have acted much quicker. Thank you. Thank you.  May it please the Court, good afternoon, Your Honors. I'm Bridget Robinson representing the Allen Independent School District. I would like to discuss the reasons that both Judge Mazant and Judge Clark were correct in their report and recommendations and decisions, respectively, regarding why there was no genuine issue of material fact and the Allen Independent School District's motion for summary judgment was granted on three independent basis. First, though, I'd like to briefly address the fact that in their brief, plaintiffs made assertions of fact that are neither supported by the record, referenced to appropriate record sites, or in some cases, correct. For example, in their brief, and again here today, plaintiff's attorney stated that BH was convicted of a sexual offense the prior school year, that was the 2009-2010 school year, when he attended Anderson Elementary School. There is nothing in the record to establish that BH was convicted of a sexual offense. Rather, the only evidence was that the school district received a report that BH had been charged with a Title V offense and took remedial action, including his ARD committee, which was required because he was a special education student. When you say charged, you mean administratively within the school system, not juvenile court or criminal court or any of that type? You mean within the school system something happened and he was disciplined or they tried to figure out what to do with the situation that happened? No, Your Honor. It was not in the school system. It was off-campus behavior, but the school district received a report from the Allen Police Department, which they then used to convene an ARD committee, which was required because BH was a special education student, to decide what discipline would be imposed while those charges were pending in the criminal court system. There's no discipline in this ARD report. There's no monitoring in this. It said that he was going to have these two months. There's something in the briefs that he'd be looked at. It's only about his educational needs and the fact that he's doing poorly in language arts and about his pencil and doesn't whole pick up his pencil and he needs help. There is nothing in any of these ARD reports or any of these subsequent reports that shows that they knew he needed to be supervised because of his sexual issues or that he needed to be monitored for any kinds of bullying or anything. I don't understand how you can say that they were taking this into consideration whenever he was coming to the new school. The parents told the school that he was going to be a problem because they saw it on the news or whatever that he was coming, even though he's the one who had done this to this kindergartner. The parents told the school the school has nothing in its plan whatsoever because I've read every single plan and every single report, and there's nothing about him being extra supervised or watched or anything. That doesn't mean that you're liable for the Title IX because you've got to show actual knowledge, but the school did nothing to keep this person from sexually harassing people even though they knew he had a history of that. Your Honor, the prior school year, the 2009-2010 school year at Anderson Elementary, he was disciplined by being placed in the disciplinary alternative education program. But when he came to the new school year... This school year, and it's uncontroverted, by the way, that during the 2009-2010 school year there were absolutely no incidents between CK and BH. So the year in which he was charged with the off-campus offense, there were no incidents whatsoever between BH and CK. The following school year, the 2010-2011 school year, which is at incident in this particular case... Because he was at an alternative place where it's supervised. So he then gets to come to the regular school again, and there should be some monitoring of him to make sure that he's not harassing young children or he's already shown a propensity for this, and there's no supervision, and he's placed in a gym class where you're changing clothes in the locker room, and there's no supervision, no monitoring, there's no plan to monitor. The only monitoring being done has to do with his special education needs, which is admirable and appropriate, but he's got other problems. However, the ARD Committee, which monitors students regarding their special education needs, monitors all aspects of students' behavior. No, but this report says that his behavior is not related to his disabilities, and the reports check off that it's his problems with his emotional problems and things. One of them says he doesn't even have any emotional problems, but the other one says that his problems in that violent area does not have to do with his disabilities. So there's no monitoring for him being a predator. The ARD Committee consistently monitors all students who are special education students by reviewing all reports of behavior as well as all school work, and that is done on a consistent basis. This particular school year that we're talking about, though, is the following school year at a completely different campus. Right, but they know he's coming in and they know he's had trouble, and the parents say, school, you shouldn't let this guy come in, and that may be wrong because maybe he has a right to come in, but where is the evidence in the record that the school did any precautionary things to keep him from being unsupervised with other children knowing his previous conduct? Well, school districts are not allowed to exclude people from school merely because they've been charged with an off-campus offense. In fact, I said they were probably wrong in saying he should be excluded, but they are supposed to supervise problematic people. And he was supervised. No, there's nothing in the ARD report that shows he got any extra supervision, and we know that they were unsupervised in the gym over and over and over again. Well, again, you're not allowed to have a one-on-one safety monitor police officer on a student merely because in a prior year they were charged with an off-campus behavior. There's a problem that you have to juggle the rights of BH to come to school and be treated somewhat normally with the rights of all these other kids to not be harassed. And so your argument is we're doing the best we can. And I guess my question for you would be, what does the law say about, let's assume you did sort of negligently conduct yourself, you being AISD, not you personally, in your handling of BH, what does the law say about whether that translates to actual knowledge of a problem with CK? Well, that's an excellent point, Judge Haynes, because even assuming arguendo that you were to assume that the school district was negligent, which the school district was not. The school district did absolutely everything they could as far as monitoring the student. As a matter of fact— But they did not monitor him in the gym. You cannot say they did everything. They didn't monitor any of the children in the gym. They were negligent. Now, assume that. Tell me what the law is on that. If you assume, arguendo, that the school district was negligent, although I certainly don't concede that, and I think the record will show exactly the opposite. As a matter of fact, there was a meeting only three days before the report regarding BH in which there were no behavioral activities noted and certainly no sexual. Then— How can you say that there was no report on it because there was no teacher watching them in the area where they were conducting it? So if you'd had teacher supervision, a regular teacher, not a special teacher following them around or anything, just a regular teacher in the gym doing their job, then this wouldn't have been unsupervised. But even under the circumstances where you did assume that the Allen Independent School District was negligent because he was in the school and in classes with other students, the causes of action or the cause of action under Title IX asserted by plaintiff was not actionable in this case, and the court correctly granted summary judgment for three different reasons. First, there was no actual knowledge of a substantial risk to CK. As a matter of fact, until December 9, 2010, when CK told Mr. Puster that BH had stolen his glasses or taken his glasses, there was no information whatsoever that BH had ever in any way done anything to CK. Does the scholarship have to be specific to CK, or can it be for any smaller children who are vulnerable? It has to be a substantial risk of harm to that student or some student who is affected if that other student were bringing a cause of action. Okay. But it has to be to— Whomever is asserting the cause of action, Your Honor. But in this particular case, it was CK asserting the cause of action. It was only upon further questioning by Mr. Puster that Mr. Puster found out that CK had chased BH and had gotten his glasses back, and then additional questioning by Mr. Puster about have there ever been any other interactions with you and BH, in which CK told Mr. Puster that there had been something that happened in gym class. And Mr. Puster asked him, What happened in gym class? And he said, Well, it happened once or twice, but it was a long time ago, and I don't remember too well. And all of that is in the statement, which was typed by Mr. Puster, and CK reviewed and signed and wrote this is correct, which is at page 201 of the record. Upon further questioning about what happened in the gym, Mr. Puster found out that BH and occasionally this other student, TB, would teabag other students. Upon questioning about what was teabagging, he found out that it was when they would move their crotch in front of someone or in some cases make humping motions against another person, but always fully clothed, never exposing any parts or touching any parts or touching these other students. You're not saying that's relevant, the fact that it's clothed versus naked. You're not saying that it's somehow not a big deal or anything. I'm not saying it's not a big deal. No, I'm putting it in context, because part of the allegations were that these were sexual assaults. It is a sexual assault to be humped, dry humped through clothes, isn't it? And to have somebody's genitals, even if they've got their clothes on, over your mouth against your will. Isn't that a sexual assault? Well, this was certainly harassment, but I don't think based on the reports received from the students and everything learned from the investigation, you could say anything that happened was a sexual assault because there was no contact with any sexual organ of any person. Well, let me ask you this, because, you know, you're drifting off into an area that I don't find helpful. The question to me is, once Mr. Puster does learn of the problem, what was done and how fast was it done? Because your opponent's saying you didn't act fast enough, so tell me how quickly. I thought that it was by, like, December 13th something had happened, but maybe I misunderstood the record, so you tell me. No, you understood the record correctly. Mr. Puster immediately began an investigation. The report was on December 9th, 2010, which was a Thursday. Mr. Puster took these allegations so seriously, he brought in the campus principal, Ms. Kennedy, and both Mr. Puster and Ms. Kennedy set aside everything else they had to do, and they immediately conducted an extremely extensive and thorough investigation of interviewing over 50 students, taking student statements, interviewing all staff members, and interviewing the alleged perpetrators to follow up on additional questions more than once. As Ms. Kennedy said— Was there anybody who said the teachers knew about this teabagging? Absolutely not. As a matter of fact, plaintiffs even admit that this happened when there was no adult supervision. They pled it in their first admitted complaint, which is at the record, page 25, paragraph 15, subparagraph C. C.K. himself admitted in his affidavit that it happened when there was no adult supervision, which is at pages 1493 to 1494 of the record in paragraph 6 and 8 of his own affidavit. The only thing that plaintiffs had, and they claim supported a finding that anyone knew about the allegation, was that plaintiff claimed in his affidavit that it was his opinion that the school district was aware of the bullying and sexual harassment but for some reason did nothing to stop it. However, the magistrate judge sustained— The dad said this? No, C.K. included that in his affidavit. But that statement was stricken, the objection was sustained, and then-Magistrate Judge Mezant, now Judge Mezant, sustained the objection to that statement, which was not objected to by plaintiff when they filed objections to the report and recommendation. So that argument has been waived. Moreover, even if plaintiff did think that the school district knew the person's own subjective beliefs of discrimination are simply not sufficient to establish a cause of action under Title IX. Okay, let me ask you about the because of sex. So there was an interesting interchange between your opposing counsel and Judge Elrod on the subject of whether because of sex means sex as in male or female or means sex as in an act of intercourse, a physical act of a sexual nature. What is your response to that? Your Honor, under Title IX, the discrimination has to be based on sex, which means gender. It cannot merely be sexually offensive. Same sex? So then the question is whether same-sex harassment is because of sex and homosexual conduct is not by itself because of sex, right? Correct, Your Honor. You have to show that you treat men differently than women. Correct, Your Honor. There has to be some disparity because the conduct has to be based on sex. It cannot merely be tinged with offensive sexual connotations. And some of the sites that we've included in our brief for that are Sanchez v. Carrollton Farmers Branch Independent School District, citing Frazier v. Fairhaven School Commission. In other words, it— The Bowe brothers case, while that's a different case, would have been a lot easier case if because of sex meant sexual conduct. You're familiar with the Bowe brothers. That was the en banc case involving the guy that was treated as if he were effeminate and viewed as being effeminate, and we found that to be sexual stereotyping. Yes, Your Honor. But I don't think that was a Title IX case. No, but because of sex is a phrase that's used a lot. I don't know that the phrase changes when you move it from Title IX to Title VII, right? I mean, wouldn't it be the same, or am I missing something? The conduct still has to be based on sex. Right. I mean, in other words, if we have cases construing the exact same phrase in a similar type of statute, a correlative statute, then wouldn't we construe it the same way, or wouldn't those be informative? It is an informative case, and it could be construed the same way regardless of sexual orientation. That would make no difference as long as the conduct were based on sex. But in this particular case, it's clear that the conduct was not based on sex. The investigation showed repeatedly that this conduct was toward both boys and girls regardless of sex. There was absolutely no difference regarding whether the conduct was based on sex. And because there was— And all this conduct, the school was not aware of any of this until the December 9th interview discussion? That's right, Your Honor. And the school district immediately investigated on December 9th and 10th during those two days. No other student had complained of this other student? No. Nothing whatsoever was known by the school? That's correct, Your Honor. No student had reported it. No one had complained about it. They did not find anything from anyone until they conducted the interviews on December 9th and 10th, 2010. And many students were still unaware of it at that time, but statements were nonetheless taken. Some students said, yes, I saw this happen once to one female student, or I saw it happen once to one male student, but it was uncontroverted through all of the statements that that was when none of the teachers were looking. Furthermore, both Judge Mezant and Judge Clark were correct that not only was there no actual knowledge and there was no conduct that was based on gender or sex, but the school district was not deliberately indifferent. You said gender or sex. Where do you get that? You answered Judge Haynes' question that sex means gender in Title IX. What authority do you have that it only means gender? Well, as I said, the Sanchez v. Carrollton Farmers Branch case, quoting Frazier v. Fairhaven, specifically said that the offensive behavior must still be based on sex, per the words of Title IX. Sex, per Title IX, and if we use Bow Brothers, Bow Brothers, it was not sex in that the person was homosexual, but it was sex in that the person perceived the person to be effeminate and weak. I'm sorry, that was the context of the case. So they perceived them to be a weaker version, not, quote, manly, which I'm certainly not ascribing to those stereotypes and asking the question. I'm just asking questions. They perceived them to be not manly, and they made comments, some of the same comments that were made in this case, the use of the F word, not the other F word, and use of these words that describe people that are not seen as strong in the manly sense under terrible stereotypes. So why wouldn't that be similar to this case in that you pick off girls and you pick off weak men? So why isn't that because of sex? If I may respond, though my time has expired. Please do, and then I have one other question. Of course, Your Honor. That's certainly not what the investigation disclosed in this case. In fact, there was nothing to show that C.K. was targeted because he was perceived to be homosexual or a weak boy, and, in fact, some of the assertions that are made, like many of the plaintiff's other assertions, are simply not supported by the record. Again, the evidence was that this student, B.H., was an equal opportunity offender, and boys were not targeted because they were perceived to be effeminate, and girls were not targeted because they were perceived to be masculine or otherwise a stereotypical. It was simply whomever happened to be available at that time or in close enough range when a teacher was out of the room to be targeted. There was absolutely no targeting based on sex in this case, and both Judge Mazant and Judge Clark correctly found that there was no summary judgment evidence to support a finding of discrimination based on sex, much like actual notice or deliberate indifference. Okay. I think that you and I got off on the wrong foot earlier because I think that it was your desire to say that it wasn't negligent, and I thought that the record shows that it is negligent, and I've been in other government, and I certainly didn't mean to step over you earlier, and I want to apologize if I stepped over you while you were trying to make your arguments. Not at all, Your Honor. But I do have a question. I've had other cases in which the lawyer has acknowledged that the behavior of the school district wasn't ideal, but that it wasn't actionable. I've had a number of those kind of cases, and I actually thought that was the approach you were going to take here, but you were very much defending what the school district did as being proper. My question is, if that was proper, why was BH permitted unsupervised in the locker room? Why was that proper? Well, Your Honor, again, there were never any reports of any on-campus conduct by BH. So it's proper for any students to be unsupervised in the locker room, whether there are reports about them or not? Again, you have to weigh the rights of all students, and because of the lawsuits that were filed against school districts that had adults monitoring in locker rooms because that was felt to be invasive, the school districts have to balance all of those considerations. I'm thinking of Jerry Sandusky. I mean, he certainly was in the locker room. What about the gym itself, where there's no supervision? They're just set to run. Is it your position that that was a proper thing that the teachers did in having the students unsupervised in the gym? I think the evidence of the only time it happened in the gym was when the teacher was taking roll and was not looking. And it is sometimes difficult for a teacher or coach to be taking roll and see something that may happen in another area. So was the evidence not that they were sitting in the office talking during gym class and they weren't in the gym, but they were sitting off by themselves? I thought that was the evidence, that they were in the office and they weren't even in the area where the children were. CK claimed that they were in the office during changing times and that there were other people in the office at some points, but not all coaches who might have been in offices talking were necessarily PE teachers for the particular PE class there at the time. That would have been distracting if the people were in the office while the other people are trying to conduct their class. Coaches' offices are often off of the gymnasium, so that's where they have their offices. And when they don't have a particular class or they're in their off period, they may be in their own offices, even while a class is being conducted in the gym. That's not highly unusual, Your Honor. So were you telling me earlier that it's the Texas school districts, of which they have this Texas Association of School Boards gives all kinds of guidance, that it's the policy that there are no adult authority figures in any gym changing rooms because of concerns that the adults are going to be harassers? Is that the rule in Texas? Is that the rule in your school district? I'm not aware that there is a policy that specifically prohibits all coaches from being in the locker room, but it is certainly unwarranted and has been found to be so while the students are actually changing. In other words, if they go in or call them out, it's supposed to be when they're dressed and not in a state of undress, if that answers the question, Your Honor. Okay, thank you. Yes, thank you, Your Honor. Eric? Brief rebuttal. I just want to first clarify one point. I believe opposing counsel said it rose to the level of sexual harassment, not sexual assault. Again, as I discussed earlier, the school found there wasn't a sexual assault. So I think that's kind of a mischaracterization. On CK? Yes, on CK. Robert Puster, in his investigation, his report notes sexual assault. But does it matter for Title IX? Sexual harassment and sexual assault are both actionable, right? Correct, Your Honor. I just want to just correct that comment. There were questions regarding whether or not there were any complaints about this student before this occurred. I believe the most notable complaint was by CK's parents, his father, when they sent the email. That's a different kind of complaint. That's a complaint like I don't want this kid in my school. The question was whether there were any complaints about any actual conduct other than the incident from elementary school, which we've already talked about. But there wasn't any complaints about that 09 to 010 school year, as I understand it. Right. And the response is this, because I've heard the comment, well, no student complained about BH before this happened. Well, the case law will tell us that we really don't require and we cannot only rely on students who are children, because we're all young ones, to come forward and offer these complaints to their teachers, to their superiors and volunteer information. The problem is you don't want to make a completely unworkable standard. You have a school that has to balance BH's rights against CK's rights and everybody else. You have the problem that if you monitor the locker room, you've got students saying I don't want adults watching me change. This is creepy. And this creates its own set of problems, as we saw with the whole Pennsylvania issue. And so it seems to me the actual knowledge requirement is put in there for a reason, which is we want to be sure we're holding schools accountable for what they actually know and not. So if the kids aren't reporting it and no one else is reporting it and you just have a parent who's irate about something that happened a year or two ago at another school, I don't really know what you're expecting the school to do. Consistent with all of these other considerations. And that's a fair point. And I don't want to belabor the point regarding the witness statements that came out after the fact. Certainly those were revealed about what happened after this. But they did something. I don't think they acted fast enough, but they did do something. Once all of this came to light, they didn't continue on with BH being in the locker room teabagging everyone. Right, and didn't mean to cut you off. I cite to those statements again and again because they depict a situation that was in place, the harassment that was going on before the December 2009 incident. The students came forward when they were asked, when they were pressed. They said, yes, this has been going on, and this has been going on the entire school year, or at least up to this incident. So obviously the witness statements came after the fact. But they describe a scenario, a situation where this was going on in gym class and the teachers were not around. And the reason why the teachers were not around, and this is what Principal Kennedy testified to, there are typically two to three teachers in gym class who were at that time. They can see that that's not the best way to run the gym class, not have supervision in the locker room. But what they did is they used that time to have parent-teacher conferences, and they called it a rotation. So there would be one person taking a role, perhaps, and sometimes they turn their back and apparently don't see anything that ever went on. And then they have other teachers in the conference, two of the three teachers or one of the three teachers in the conference room, holding parent-teacher conferences on the telephone, and one may be attending to other duties. So really they're left with one teacher. It seems to me that this is an argument directed to the school board by concerned parents that you're not running your school very well, but it's not a matter of a federal statute Title IX. I mean, we have to be careful as a federal court not to get into the business of, you know, micromanaging school districts. Correct. It's not our expertise. It's not our area, and it's not a matter of federal law. So the federal law here is actual knowledge because of SAG's deliberate indifference. That's what it is. Right. You know, I tend to agree that I think, you know, there's some questions here about how they handled this matter, but it doesn't seem to me to be going past the negligence. The best and really the only evidence, the best evidence we have are the other students. The ones that are not plaintiffs in this case, they don't have a stake in this lawsuit, and they described this behavior, the humping, the name-calling. You're saying kind of a must-have known. I mean, they just must have known because it's so prevalent. Well, it's never precise. I mean, to have a student or to have a teacher staring at it when this happens, it's not there. It is you have to get as close as you can. I've defended cities and counties, and I understand the actual knowledge standard. It's a very high burden. But you can only get so close aside from witnessing the actual crime. Thank you. Thank you, Mr. Eric Robinson. Thank you.